Thank you. I would like to reserve two minutes for rebuttal. Okay. Keep track of the time. It counts down. May it please the Court, my name is Sue Ellen Tatter and I represent Jimmy Lee Coffin, a young man who was convicted of felon in possession and received a big enhancement proportional to his sentence for another felony being committed. This was a four level enhancement and it made the difference between him being eligible for almost two years and it raised him to a 51 to 57 month sentence. It was very significant and as a result he is classified very seriously and he is the only Alaskan native in the USP in Florence. There are three reasons why the enhancement is wrong. First of all, there was no connection, no facilitation to the felony which was allegedly larceny, grabbing Honda keys, a four wheeler key from his cousin of the village security guard. My client came into a home and wanted to run away and Mr. Mendenhall, the alleged victim, had some Honda keys in his hand and my client grabbed them. Counsel, with respect, aren't you forgetting that there's an earlier part to this before he grabbed the keys? Correct me if I'm wrong, but it seems to me that what we had was a gradually escalating situation. This was the third time he came back and this time, admittedly, the firearm was not in a position to immediately discharge, but he had a firearm. Yes, he had a firearm the third time he came and he came two prior occasions and he behaved badly and he was prosecuted in the third time was the time he came in with a firearm on a strap. And the statute requires that the action be in connection with, right? But not merely present, as the judge interpreted. It has to be connected to the felony and Mr. Mendenhall testified that he just grabbed the keys. I asked him, did he threaten you with the firearm? And he said he just grabbed the keys. The firearm was obviously unloaded. In fact, Mr. Mendenhall volunteered that it was unloaded. It wasn't held in his hand, like the pre-sentence report said, like the prosecutor's brief said. It was on a strap, as if it were a bow and arrow or a quiver. It was incidental to the grabbing of the keys. Now, I'd like to cite the Ellis case, which this court decided, where they found, police found an escapee in a closet with an unloaded weapon and actually struggled with him there. And he was charged and convicted with assault on an officer for that. And the gun was right there. And this court's proximity isn't the test. It has to facilitate the underlying felony. Mr. Mendenhall... And Ellis, the gun was wrapped and stored in a closet, wasn't it? Yes, it was. That's a little different than having it, as you describe it, like a bow and arrow. Admittedly, these people knew each other, but what we have to deal with is what the finder of facts could determine and whether or not this was in connection with. I realize Mr. Mendenhall testified what he testified to, but with the gradually escalating situation. He wanted the keys before. He wanted to do something. And each time he came back, he was a little more belligerent. This time he had a firearm with him. Yes, but it didn't scare Mr. Mendenhall. Is that the test? Well, it has to facilitate something. Mr. Mendenhall said he just grabbed the keys. Now, does it count for purposes of facilitating if it emboldens the perpetrator, irrespective of whether it frightens the, I'll call him the victim? That does count. It must embolden. But there's no testimony that it did. And... There's a possible inference that it might have. It might have, but there wasn't any clear testimony about it. And one of our main points, and the second point why this was an improper enhancement is the judge used the wrong standard. He said, the guidelines tell us that the gun, that presence is the test. And that's the wrong guideline. That's the direct guideline, where it's a lower enhancement and it's a much lower burden. In fact, the Can you put my nose in the district judge's statement that presence is enough? Excuse me? Can you give me a page citation? I will when I have a rebuttal. It's in my brief. We quoted him, and he said the guidelines, he didn't say presence is enough, but he used that as the first tier of involvement. And actually, presence isn't enough, according to the Ellis standard. The other thing I would like to bring to the court's attention is that this felony was poorly proven. First, there was an allegation of robbery. And clearly, Mr. Mendenhall wasn't robbed. And the judge said, well, this is a larceny. But there's no testimony about what state crime it is. This court could take judicial notice, which is the trier of fact. Judge Holland didn't have before him the state statute for larceny. Before it's a felony, it has to be an amount over $500. And there was no testimony about this Honda. It's out there in rural Alaska. We don't know if it's rusted or brand new. And people were guessing in the courtroom how much this Honda was worth. Nobody was sworn. The probation officer says, well, I've never been there, and I don't know much about Hondas. But I think it's more than $5,000. Now, in the brief, the government says that it, irrespective of value, it might be robbery. Now, if it were first-degree robbery, would that qualify as a crime sufficient to support the enhancement? Yes, but the judge didn't find that. The judge heard the testimony, and he did not find a robbery. Did the government argue robbery to Judge Holland? The government argued robbery for the enhancement, but it argued against the cross-reference for robbery, saying it should have been a federal robbery. In fact, they wanted to enhance it further, the probation officer, for a cross-reference for robbery, and the judge declined to do that because he said this isn't a robbery. And there was no evidence given whatsoever as to the value of the Honda? No. There are two speculative remarks, one by the prosecutor who says it's under $5,000, and one by the probation officer who says it's at least $5,000. And is the dividing line $500 or $5,000? $500 in the state statute. Yeah. Now, let me ask you this. Is it necessarily theft under Alaska law if it's a, I don't know whether this is a technical term, forcible borrowing? That is to say, he's not intending to take this Honda and drive it to Lower 48. He wants, as far as I can tell from the testimony, he wants to take this Honda, get to the place where this other person is being threatened, and then, okay, once I've used the car, you can have it back. Is that theft? I don't know, and the prosecutor didn't show that, and I'd like the case Netzlaff that we cited shows that the prosecutor has the burden to prove the felony. So, you might guess, maybe it could be, but I think that's an important point because it's very likely there was no felony at all if there's a state statute that... Well, I couldn't tell from reading the state statute whether a forcible borrowing is theft irrespective of value. Well, I think that shows that the prosecutor did not prove that there was a particular felony at the sentencing hearing, and I'd like to reserve my remaining time. Thank you. ... ... Good morning, Your Honors. My name's Kelly Cavanaugh. I work at the U.S. Attorney's Office. I'm an Assistant United States Attorney, and I'm representing the government's interest here, so may it please the Court. The issues that we're talking about with respect to Mr. Coffin are, as Ms. Tatters talked about, is whether there was a felon in possession in connection with another felon. I think that in her presentation, part of the standard that she missed is the cases, the United States v. Bolton and Rooten, talk about emboldened, facilitate, and they also talk about the potential to facilitate another felony offense. And her comments talk mostly about the facilitation or the emboldened, but I think the potential to facilitate or embolden is also important here, given the facts of how Mr. Coffin came into possession of the keys from Mr. Mendenhall. Yeah, this one's kind of tricky for me on the firearm enhancement, meaning it's a .30-06, the bolt is open, it's going to be it's going to take a bit of effort and time if he's going to actually load it. For the purpose that he was able to serve immediately with that baseball bat. So, tell me more as to why I should call this a firearm enhancement instead of a baseball bat enhancement. Because it is a firearm. But I'm asking you, it's hard under the circumstances to see that he would have used it as a firearm. I think that might be accurate, but I think that the case law supports, or at least I didn't find any case law that differentiates between someone using a firearm as a baseball bat and using a baseball bat as a baseball bat. I think that the issue is that he's actually in possession of it's a firearm himself that he's in possession of. How he chooses to use it, whether he uses it to shoot someone or uses it to swing the butt of the rifle into someone, really doesn't make any difference. Who drew the indictment in this case? Pardon me? Who drew up the indictment? It was me. Well, in the indictment he was charged with two weapons, a .38 caliber revolver and a .22 caliber semi-automatic. There's nothing about a .30-06 in there. Because they couldn't find the .30-06. The facts of the case that may not have been fleshed out in the briefing itself is Well, isn't that a fatal variance if you have a, if somebody steals a heifer and you charge a cow in the indictment? He pled guilty to admitting to possessing these firearms. I don't think there's any dispute. There wasn't any factual dispute at the sentencing hearing that he was in possession of that .30-06 rifle. Well, there may not be any dispute about it. He described these weapons in the indictment. Right. Those are different weapons. I guess I don't understand your question, Your Honor. Let me go to a separate one. Sure. We contemplate that one. Isn't opposing counsel correct that there really was no proof offered about the value of the vehicle certainly none of the keys, and that we have to send that back to have some proof on that issue? That's a major point, isn't it? I think you can send it back to have some proof on that issue. Our argument is that that finding by Judge Holland is really a harmless error. How can it be a harmless error? I mean, it makes a big difference. I understand, but the government's position is that a robbery occurred and that this wasn't a theft or a felony taking. And I think that, Your Honor, you used the term what did you call it? A forcible borrowing. Right. An involuntary bail money. Forcible borrowing. So, the robbery in the secondary and what you what the state of Alaska calls a robbery in the second degree. And that is a taking, a forcible taking of something from another person. And I apologize to the Court, I didn't provide these citations earlier, but robbery in the state of Alaska, robbery in the second degree in the state of Alaska, this forcible taking, has been talked about in the Court of Appeals where they talk about purse snatching, where a purse is snatched from a person's shoulder, and there's not necessarily a struggle, but the only force that's involved is actually the taking of the purse from the shoulder from the person. There's also other state of Alaska cases Although, if it's a purse snatching, it's pretty clear that what's going on is what also would be described as theft. That is to say, if somebody is a purse snatcher, he's not going to take it away for half an hour, come back and here's your purse intact, put a little gas in it to make up for the difference. That's not what's happening. Right. So, what you're getting wrapped up in is that the four-wheeler eventually is going to be returned. Well, that's one of my questions as to whether that counts as either theft under Alaska law or robbery under Alaska law. I think it counts as robbery under Alaska law. And do you have case law that tells me that? The purse snatching, to my knowledge, Your Honor, there's not a requirement that something that's taken from somebody, a robbery that's taken. And do we have any finding by Judge Holland that it was a robbery and therefore qualified? We do not have those findings by Judge Holland that it was a robbery. And did you argue to Judge Holland that this was a second degree robbery? I did argue to him that it was a second degree robbery. As I understand it, the record doesn't show the value of the four-wheeler. The district court assumed a value of under $5,000 and the only testimony came from the probation officer who said, and I quote, he's not real familiar with four-wheelers and what they're worth. That's not proof. Understood. I think that the court and there are inferences that the court can make from people that have lived in Alaska that the value of an ATV in rural Alaska that runs, that is operable, which there were definitely testimony in the record that this ATV was operable, would be in excess of $500. But counsel, this is a criminal case. This isn't a county auction. The government has an obligation to bear the burden of proof. And the point here is, as your opposing counsel mentioned, then improve it. Understood. So now we have to send this back, or at least for resentencing, to grapple with the issues that my colleagues have raised in addition to the value of the vehicle. I don't think that you have to do that. I think that a robbery is what is the proper felony that occurred here and the facts that were presented during the evidentiary hearing support that a robbery occurred here, not that a question is about Alaska law. Let's say I'm here in Alaska and my cousin's over there and I want his car to go out on a date. And I come over and he's not there. And I take the keys. I kind of know he doesn't want me to do it. I take the keys. I take the car out on the date and I bring it back. Have I robbed my cousin under Alaska law? Well, did you forcibly take the keys or were they laying on the counter and you... I took them without his permission. Okay. You have not robbed them. A robbery occurs when there's person-to-person contact. Okay. So now, so this time he has it in his hand and I say, give me those keys, bro. And I take them. And you take them from him. Yep. And he doesn't want you to take the keys? Yeah, he does not want me to take the keys. That's robbery in the second degree under the state of Alaska. So when I bring it, it sounds like I might as well not bring the thing back because it's a robbery no matter what. I think that's accurate. I might as well just drive away and keep on going. That's accurate. Okay. Now, does Judge Holland make any finding that that's the meaning of Alaska law? He doesn't make any finding that it's an Alaska law. And this was laid out in the brief. We talked about it in the initial comments that he asked for and the initial arguments. Judge Holland took a break, went back to chambers, and made his finding that he believed a felony theft had occurred. And I'd just like to also point out to the court that you asked for the citation for Judge Holland using the correct standard. It's on page 65 of the record. And I respectfully disagree with Ms. Tatter that Judge Holland used the wrong standard. He actually talks about the potential to facilitate another felony, which is the correct standard under the guidelines section as well as what it is. The other thing that I'd like to point out about the felony theft that Judge Holland made his finding about and that was actually suggested by Ms. Tatter during her own argument. That was also in the record and I believe that was on page that's on page 57 where her sentencing argument was that a robbery had not occurred but it was perhaps a larceny or a theft. So, I don't have any other comments for the panel if you have any questions for me. Thank you. Ms. Tatter? The place as the prosecutor stated is excerpt of record 65 and Judge Holland said application note 14 to 2K2.1 tells us that the guideline applies to weapons that are present and the 30-06 was certainly present at the time that theft took place. That guideline doesn't say presence. It says facilitation. Yes, but then he says in the next sentence and this is oral so it's not with the precision of something that's right. And then in the next sentence he says the 30-06 clearly had the potential for facilitating the theft of the keys and the four-wheeler. So, he came around to the right standard. In the next sentence. He was driven first by the concept of presence, which was the wrong concept. And I'd like to just suggest that this enhancement did create an unreasonable sentence in this case. And on remand, which I hope occurs, I would like Judge Holland to consider what's happened to this young man because he wanted him to have a psychiatric exam and he hasn't had that. He sits by himself in a cell in a maximum security prison. The state had him in a rehab program in Nome and he was stocking shelves and going to AA. And the marshals picked him up for this prosecution and now he's in a maximum security prison with no treatment. And I think that a remand in which Judge Holland, because he was concerned for his welfare and rehabilitation and protection of the public, I think remand would assist Judge Holland in figuring out a good 3553A sentence for this troubled young man. If we send it back for the reasons that we have previously talked about here, our panel doesn't even reach the issue of the substance of the unreasonable sentence. Right. That was one of our points on appeal, but it would be moot. Right. Thank you very much. Thank you. Thank both of you for your arguments. The case of the United States v. Coffin is now submitted for decision.
judges: Goodwin, Fletcher, Smith